**DYALWOOD, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 76–4382.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1979.

Kenneth B. Wheeler, Kenneth G. Anderson, Jacksonville, Fla., for plaintiff-appellant.

John L. Briggs, U. S. Atty., Lee S. Carlin, Asst. U. S. Atty., Jacksonville, Fla., Scott P. Crampton, Asst. Atty. Gen., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, App. Section, Rodger M. Moore, Trial Atty., Grant W. Wiprud, William S. Estabrook, III, Dept. of Justice, Tax Div., Washington, D. C., for defendant-appellee.

Before WISDOM, GODBOLD and TJOFLAT, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant, Dyalwood, Inc., brought suit in 1969 for a refund of income taxes assessed and paid for its fiscal tax years 1962, 1963, and 1964. The district court granted partial summary judgment to the government in 1971, concerning the capital gains treatment of timber sales to St. Regis Paper Company. Dyalwood and the government settled the remaining issues in the case in 1976 and agreed to a consent judgment that explicitly preserved Dyalwood's right to appeal the district court's 1971 ruling. That appeal is now before us.

In 1961 Dyalwood purchased from the owners of an 11,000 acre tract of land (the "Swallow-Hopkins tract") the right to cut and remove all trees on the tract over a specified size during a term of three years. For the rights conveyed Dyalwood paid a lump sum of nearly a quarter of a million dollars, all of which was loaned to it by St. Regis. In consideration of this loan, Dyalwood mortgaged all of the timber to St. Regis. Dyalwood was obligated to pay the interest in cash and to pay $9 on the principal for every cord of wood removed from the tract. In effect the loan was paid off with timber, as St. Regis credited its $9 payment for each cord delivered to Dyalwood's loan account.

Dyalwood contends that the payments it received from St. Regis (after the first six months' deliveries) qualify as long term capital gains under 26 U.S.C. §§ 1231 and 631. Section 1231, which gives favorable treatment to gains realized on the sale of property used in a trade or business, explicitly includes timber transactions that qualify under § 631. Therefore our inquiry is simply whether § 631 applies.

■ Section 631 is substantially the same as § 117(k) of the Internal Revenue Act of 1939, added to that Act in 1944. Revenue Act of 1943, § 127, 58 Stat. 21, 46–47. Prior to that time, income received from the severance of timber was, under many common business arrangements, taxed as ordinary income. Section 117(k) was intended to promote the timber industry by giving greater flexibility in qualify-

ing timber sales for capital gains treatment. *See Dyal v. U. S.*, 342 F.2d 248, 251 (CA5, 1965); *U. S. v. Brown Wood Preserving Co.*, 275 F.2d 525, 527–28 (CA6, 1960). The provisions of § 631 show that it can be used flexibly in many kinds of transactions. But its relief is limited, and its terms must be fulfilled. Essentially the section gives two choices to the timber owner wishing to take advantage of it. He may cut and sell the timber himself and get capital gains treatment under § 631(a). This treatment is limited, however, to the difference between the fair market value of the timber and the taxpayer's basis in it; if he gets a better price for it, the surplus will be ordinary income. Moreover, to take advantage of § 631(a) the taxpayer must make an election to have the transaction so treated, which will be binding for future years as well, absent a showing of undue hardship.

■ The taxpayer may avoid the restrictions of § 631(a) by disposing of his timber in a manner that brings the transaction under § 631(b). That section covers a "disposal of timber . . . under any form or type of contract by virtue of which such owner retains an economic interest in such timber." This section covers the common practice of leasing timber land and granting the lessee the right to cut and remove trees, in return for which the lessee pays royalties. *See Ray v. Comm'r of Internal Revenue*, 32 T.C. 1244, 1250 (1959), aff'd per curiam, 283 F.2d 337 (CA5, 1960). While § 631(b)'s coverage is not limited to such leases, it is limited to transactions that dispose of standing timber with a retained economic interest. *Barclay v. U. S.*, 333 F.2d 847, 854, 166 Ct.Cl. 421 (1964). If a taxpayer who was in fact selling cut timber were allowed to characterize such sale as a § 631(b) disposal, the binding election of § 631(a) would effectively be read out of the statute. *Ray, supra*, 32 T.C. at 1250–51.

■ Here Dyalwood, rather than making a § 631(a) election, has attempted to characterize its deal with St. Regis as a § 631(b) disposal. It claims that in addition to the written mortgage (which it does not con-

tend qualifies as a § 631(b) disposal), there was an informal agreement between the companies that all of the timber would go to St. Regis. The government does not dispute this factual assertion, but offers two alternative legal theories under which it would be entitled to relief. It contends first that the agreement does not constitute a § 631(b) disposal, and second that evidence of the agreement is inadmissible under the parole evidence rule. We find that there is no genuine issue as to any material fact and that the agreement does not qualify as a § 631(b) disposal. We therefore affirm the summary judgment, without passing upon the applicability of the parole evidence rule.

Of the three elements of § 631(b), two are easily met here. First, with regard to all of the timber cut after the first six months, the holding period is satisfied.[1] Second, if there was a disposal of timber at all, it was with a retained economic interest, since Dyalwood's income was contingent upon the progress of the severance of timber. *See Crosby v. U. S.*, 414 F.2d 822, 825 (CA5, 1969); *Dyal v. U. S., supra.* However, the transaction between Dyalwood and St. Regis does not appear to have been a disposition at all but simply an agreement to dispose at a later time.

■ Dyalwood maintains that it made a binding agreement, either orally or by implication (by the parties' course of action), to sell all of the timber on the Swallow-Hopkins tract to St. Regis. We do not doubt this, nor do we doubt that from the outset it was the understanding of all concerned that St. Regis was the intended recipient. But such an agreement does not necessarily constitute a § 631(b) disposal. Dyalwood evidently urges us to hold that to sign a contract for the sale of timber (or to make one orally) is to "dispose" of it. We are not inclined to read the statute so loosely, nor do we find support for Dyalwood's view in prior cases addressing this question. These cases have consistently required that a present disposal of timber be evidenced by some indication of actual ownership or control.

■ Of the factors that have been considered in determining in such cases whether a disposal has been effected, the one most emphasized is who does the cutting. If the seller does the cutting himself and delivers cut timber to the buyer, there is a strong indication that there has been no disposition until the actual delivery, and capital gains treatment must be sought under § 631(a). If, on the other hand, the buyer enters the land and removes timber without the involvement of the seller, a stronger argument can be made that there was a prior disposal of cutting rights. Here the cutting was done by an independent contractor. In this and other respects the case is quite similar to *Ray v. Comm'r of Internal Revenue, supra*, in which we affirmed the decision of the Tax Court that the taxpayer had failed to make a § 631(b) disposal. There the buyer had the right to enter the land and cut timber if the seller failed to make deliveries, but the court held that the seller "had the primary right and obligation to cut, remove, and ship the timber involved." 32 T.C. at 1252. It pointed out that the seller chose the contractor and directed the operations. *Id.* at 1253. Also similar is *Varn, Inc. v. U. S.*, 425 F.2d 1231, 192 Ct.Cl. 272 (1970). There was a similar loan and mortgage agreement in *Varn*, but the court held that the seller had not made a § 631(b) disposal to the buyer, pointing out the seller's right to choose the contrac-

---

1. At first glance it would seem that Dyalwood faces a dilemma with regard to the timing. If it characterizes the individual wood deliveries as the disposal, there is no retained economic interest. If it characterizes the initial agreement as the disposal, the six month holding period has not been satisfied. Before 1954 taxpayers did face this dilemma. *See Ah Pah Redwood Co. v. Comm'r of Internal Revenue*, 251 F.2d 163, 166–67 (CA9, 1957). Since 1954, however, the section has allowed the date of cutting to be deemed the date of disposal. Hence, advance royalties on a qualifying transaction are given capital gains treatment even if they are received before the holding period is over, as long as the actual cutting is not done until after six months have elapsed. Reg. § 1.631–2(d)(1), Mertens Law of Federal Income Taxation 1954–1960 Regulations, at 1028.

tor who would accomplish the cutting. *Id.* at 1234.[2]

■■■■ While the arrangement in this case may be ambiguous, we find that Dyalwood has failed to show that it has disposed of the timber to St. Regis. The exhibits attached to Dyalwood's motion for summary judgment show that it hired and paid those who did the actual cutting. Even if St. Regis employees were allowed to enter the land and direct cutting, this does not override the fact that Dyalwood owned the cutting rights and hired a contractor to do the cutting for it. We are aware that informal agreements are common in the timber industry, *Barclay v. U. S.*, 333 F.2d 847, 854–55, 166 Ct.Cl. 421 (1964) and we do not hold that a written agreement is necessary for the successful invocation of § 631(b). What is necessary is some indication that the taxpayer has indeed given up control of, disposed of, the timber. Here there is not sufficient indication. Rather it appears that Dyalwood has, in accordance with an informal agreement, sold a quantity of cut timber. Congress has afforded capital gains treatment for such sales under § 631(a), to those taxpayers who elect to use it. *See Ray, supra* at 1250–51.

Although other cases have found § 631(b) disposals on close facts, these are consistent with our result. In *Barclay v. U. S., supra*, the Court of Claims had sufficient evidence to find that the independent contractor who did the cutting was an agent of the buyer. In so finding the court relied on the fact that that must have been the intention of the parties, who were selling timber to a corporation they wholly owned. 333 F.2d at 855. In another case relied upon by Dyalwood, the court's finding of a § 631(b) disposal was based in part upon a showing that the buyer was to do the cutting. *U. S. v. Giustina*, 313 F.2d 710, 715 (CA9, 1962).

■■ At oral argument, counsel for Dyalwood advanced for the first time the contention that the government's position is inconsistent with a published IRS ruling. Rev.Rul. 57–90, Mertens Law of Federal Income Taxation, 1954–1957 Rulings, at 627. That ruling merely states that § 631(b) is applicable "regardless of the nature of the taxpayer's business or the purpose for which the timber is held." This ruling is irrelevant to the issue of whether the taxpayer has met the technical requirements of § 631(b). We find that Dyalwood has not.

The judgment of the district court is AFFIRMED.

---

**2.** Dyalwood is correct in pointing out the similarity between *Varn* and the present case, but mistaken in relying upon it. The *Varn* court found a valid § 631(b) disposal not between the seller and ultimate buyer, but between the seller and the independent contractor that did the cutting. Dyalwood has not alleged a similar disposal here.